Our 3 o'clock case and our last case for the day is 4120252 in re. the Marriage of Pagliara. And for the appellant we have Talmadge Brenner for the Appellate League, Dennis Woodworth. You may proceed Mr. Brenner. Thank you.  Fortunately, this case is relatively simple and straightforward in terms of facts. What we are dealing with is a child support issue. Essentially, the appellant, Tracy, was general counsel for a company called Gardner-Denver. At the time of the divorce, he was earning a very large income. It was approximately $2 million a year. He and his wife, Carol, entered into a marital settlement agreement where they disposed of all issues very quickly. Property settlement, maintenance, child support, various ancillary provisions which we would find in almost any marital settlement agreement. The bad news is that the CEO of Gardner-Denver suddenly retired. A new CEO came in and Tracy found himself without a job three months after this marital settlement agreement was entered. He did receive a very nice settlement package, but it was certainly not infinite. He immediately went to work trying to find another position as general counsel for a major corporation. Unfortunately, positions like that are few and far between. He spent a long time researching companies... When the parties originally entered into their settlement agreement, they settled upon a certain amount of child support for three children, a certain amount for two children when the oldest reached majority, and then the $5,000 for the third child. Did they take into consideration the 32 percent? Is it, what, 28 percent for two children, 20 percent for one child? Was that part of what went into the formula for arriving at the numerical child support they agreed upon? No. The testimony at trial was that this was negotiated by counsel at the time of the marital settlement agreement. Statutory guidelines appear to be completely ignored. Well, the reason I ask is because I wonder if statutory guidelines should be taken into consideration for this particular case and this appeal. Because if so, that does not help your client. No, that's true. Statutory guidelines are there for a reason. But we get into another line of cases involving the high-income folks in Raymarriage v. Bush, which I don't even think is cited in my brief. But it involves the proposition that child support should never be a windfall to the child support recipient. And I think that was factored into the figures that were originally arrived at in the original marital settlement agreement. But Tracy paid as he was required to under the judgment. He ultimately found another general counsel position which paid substantially less than what he had received from Gardner Denton. By that point, his severance package had run out and the numbers simply were not working any longer. At that stage, he filed his motion to modify. Now, the evidence presented was essentially the facts which I have laid out. Both sides put forth a good deal of evidence concerning Tracy's financial circumstance as well as Carol's financial circumstance. And what that evidence showed by Carol's figures, Tracy had experienced a 59% decrease in total income. Tracy had figures which were higher, but even using her figures, it was 59%. Carol was investing, I believe, $2,000 a month at the time of trial. Tracy's testimony was that he was essentially taking money out of his retirement for purposes of keeping all the balls in the air. At the conclusion of the trial, the trial court essentially rendered from the bench a nine-page oral decision. And what the trial court did was it said, since there is a marital settlement agreement, he believed that a different standard applied. Now, the trial judge went on to cite two cases, Adamson and Olson. Now, both of these cases stand for the proposition that marital settlement agreements should be enforced. And that's perhaps a bit of an overstatement. But the distinguishing factor is that neither of these cases dealt with the issue of child support. One dealt with the modification of spousal maintenance. And the other involved a relatively strange set of facts where there was a modified judgment for dissolution of marriage. Neither of the cases involved child support in the least. Now, the court was very clear that it felt that the existence of the marital settlement agreement was an extremely significant factor, if not a controlling factor, in denying Tracy's motion for a modification. Now, what we also have is the Illinois statutes specifically on the point of child support. Namely, 502B and 502F of the Marriage and Dissolution of Marriage Act. Both of these statutes say that an agreement cannot preclude or limit the modification of child support. Now, everything in the judge's nine-page decision indicates that these two folks had struck a bargain a couple years ago, and that bargain should be enforced in every respect. Now, we disagree with the trial court's reasoning. We do not believe that is the law. It is certainly not the statute, nor is it the case law that we have. Didn't the trial court indicate that it understood this child support agreement can be modified? He did during the course of the trial. In the middle of the proceedings, he did make a statement to that effect. But we shouldn't believe him? Well, if we look at his actual decision, that's not what he was looking at. The decision is stating in every way possible that he believes the marital settlement agreement creates a different standard to which courts should be looking. So if he had simply said at the conclusion of this hearing, denied, we wouldn't be here? Well, I think he would have had to say a little bit more than that. There's no law that requires him. There might be good judicial practice. Agreed. And Judge Drummond, we know from experience in this court, we've seen a lot of his stuff, he's a very sharp guy and very learned, makes good records and explains his thinking. Agreed. So you're asking us to reverse the trial court because his explanation wasn't up to snuff? Well, that's one of the reasons. There is also the second reason, which is the standard for modification of child support. And that's a two-part test. The first part of that is to determine whether there has been a substantial change in circumstance. Once the court has determined there has been a substantial change in circumstance, the next part is to determine whether and by how much child support should be reduced. Now, this court came out pretty darn clearly in the Gleason decision, where it said ordinarily absent substantial other income, we would conclude that a 50% decrease in income would be a substantial change in circumstance. Here, even under Carroll's figures, there was a 59% decrease in income. But you indicated this is essentially a two-part test. It seems to me that Judge Drummond indicated this is a substantial change and skipped to the second part where he said, but under all these circumstances, I don't see any reason that I need to change the order that was entered. Well, in the second to last sentence of his oral ruling, he said that he found there was no substantial change in circumstance. We believe that that is against the manifest weight of the evidence right there. Well, I think he said a sufficient change in circumstance. Sufficient? I don't know if that's possible. I read this as him paying more attention than some judges would to the settlement agreement. But rather than, I read it not that he's bound by the settlement agreement, but that he recognizes he's dealing with people that, even with the reduction in income, is still in the top 1% or 2% or 3% of the nation in terms of regular income from a job, that there's no reason to change what amounts to a $5,000 child support. Why should I do that? Your income is sufficient for you to do that, and if you're being pinched, then spend a little less on a computer, spend a little less on a car. The expenses that you can control, but the required amount of child support, which you entered into, not me. I mean, he's telling people, I would never have entered into this agreement. I would never have ordered this. But if you entered into it, and you want to provide for the children in this way, that's how we're going to do it. And given that you still have sufficient funds, I mean, if you have to dip into your money to take care of the college fund, that's okay. That's something you agreed to. I'm not going to reduce child support. Because at this point we're only talking about child support for one child, right? Correct. By the time that we're dealing with this. I mean, I'm not convinced that he used the wrong standard. Maybe he didn't explain himself the way that he should have, but if we were to affirm and make this an opinion, I don't think it stands for the proposition that where there's a marital settlement agreement, something else has to be proven. It is rather, okay, there's been some change in circumstances, but do those changes really make any difference in a case like this, given the assets of the parties and the income potential? And how much did he earn, by the way, after he conceded that he got a bonus? $300,000 plus? Yes. So what did it amount to? What was the bonus? All things including the bonus, and Mr. Woodworth may correct me, but I believe it was around $600,000. So a guy making $600,000 is complaining about a $60,000 child support bill for the year. There are a lot of judges around the state that would have said, go away. Don't you agree? It's possible, Your Honor. And I understand he's taken on other responsibilities as part of the agreement, but where's the judge wrong to say that that's separate from your child support obligation? Because that's really what he said. You're in control of those. He did, and that gets to another point that I bring up in the brief. Some of the other things, such as college expenses, things like that, are subject to an even different standard for modification, and they would be harder to modify than child support in and of itself. My understanding of the case law is those other, what I deem as ancillary child support provisions, are subject to whether the obligor has assets sufficient to pay for them. Child support is more of a function of income, and in this case, what we have is a pretty massive income decrease. The fact that we're talking six-figure incomes, yes, it's certainly significant, but it doesn't change the underlying theory of the child support statute and concept. It seems to me that the trial court also did something here which I'd like your thoughts on, namely, to your client's credit, and I don't mean this in any way to be a joke. We see lots of these kinds of cases, and more so than most, he, as the noncustodial parent, is doing everything he can to be a part of the life of these children, even the exceptional business of coming up from Texas often, to be involved in their activities in their teenage years. That's terrific, and I think it's something for which he should be commended. But at the same time, I don't know that it's necessary that he keep a residence in Quincy for that purpose. I think there were other aspects that the court looked to, talk about how they had agreed that they were going to get cars for the kids and he was going to buy them. Well, he could have spent less to do that. Most kids would have been happy with some cars as opposed to as expensive as they occurred. In other words, these are things that are within his control that are extras and good for him, but before he comes to court to ask for child support to be reduced, the court wants him to eliminate those extras first. Why isn't that a reasonable thing for the trial court to do? Well, I think the trial court can look at those things, and I think the trial court certainly did. But I think the underlying theory of the child support itself is whether there, number one, has been a substantial change of income. And what the court is asking me right now is more in terms of the second line of the analysis. We believe that the trial judge did not acknowledge the substantial change of circumstance with a 59% income decrease. I believe that got us past the first prong of the analysis. If I am reading the trial court's decision correctly, the trial court is ruling that, hey, Tracy didn't get past the first prong, so the second prong, well, the trial court can certainly consider many things, some of which the court has just mentioned. But we haven't gotten to that point because we believe that the trial court abused discretion by not finding that there was a substantial change in circumstance based on this income decrease. Now, I think I've already addressed the issue of whether other aspects of the marital settlement agreement were subject to modification. The trial court specifically brought up, well, why didn't you try to modify some of these other things? Why didn't you try to reduce some of the expenses within your control? Now, expenses within its control, I think, is a factor which the trial court could legitimately consider had it made the finding that there had been a substantial change in circumstance. Our position is that it did not make that finding. But in terms of things like college expense, providing cars regardless of the price of cars, those particular aspects of child support are subject to a different standard than child support itself. They would require essentially an exhaustion of assets before the court could consider whether it would be appropriate to modify those particular values. Yeah, but we're not talking about modifying whether a car is supplied, but I'm pretty sure the marital settlement agreement doesn't say an 8-cylinder, $28,000 coupe or whatever it was, but that's the amount, or that it had to be new. The prices paid suggest that they may have been new cars or very upscale used cars. The testimony that was at the trial court is Tracy would have a car when a child turned 16. He would turn that car over to his son, and he would replace it with a new car of his own. That happened twice, just because of the age of the two oldest boys. So they ended up receiving cars that would be three or four years old, but also very nice ones, I assume. Honda Pilots. Oh, well, modest, I suppose. Pretty nice for a 16-year-old. Yeah, very nice. Well, unless the court has any further questions, I'll turn this over to Mr. Woodworth and reserve the balance of my time. Okay, you will have rebuttal. Thank you. Mr. Woodworth? May it please the court, Mr. Brenner. One thing I would like to point out, during the Barrett v. Sullivan agreement and what was reached between the parties, it's interesting to note that one of the provisions that Tracy had put in the agreement was that Carroll could not modify child support for a term of eight years. He didn't put in the agreement that he could come back and modify, but he tried to limit Carroll's ability to modify and increase that child support. Because it was obvious from the agreement reached between the parties, child support wasn't set at the statutory guidelines. Because as I pointed out in the brief, if child support was set at the statutory guidelines in 2007, his monthly obligation would have been almost $41,000 per month, $43,000 per month in 2008, $33,000 in 2009, and so forth. So it was obvious that the guidelines weren't followed. Well, you're not arguing that the guidelines should have been followed. No, no. You're not arguing there should be a windfall. No, not at all. And we certainly agree with the body of case law that clearly says in these high-income cases that child support shouldn't be a windfall to the custodial parent. Certainly the court – it's our position that the court has wide latitude in setting child support in these high-income cases. The court's got to consider several things, such as the income of the parties, the standard of living that the child, custodial, non-custodial parent would have enjoyed, the income and assets awarded to the parties through the divorce proceeding itself and the final judgment. So no, we're not arguing that the court should have. But in our brief, we point out the fact that what these statutory guidelines would be. And certainly Judge Drummond in his ruling in the very beginning of the case when Tracy's expert witness was testifying, it stopped and asked if Mr. Pagliario was seeking a deviation from the statutory guidelines, because he quickly pointed out that if you look at the statutory guidelines using Tracy's figures, and his argument and his expert witness was his net income was $301,000 per year. And the judge quickly calculated that up to be $5,017 per month if you follow the statutory guidelines of 20%. Obviously, our exhibits and our calculations would have Tracy's 2011 net income being $679,000. So based upon our calculations, his monthly child support obligation should have been, if we look at the statutory guidelines alone, $11,324 per month. Nonetheless, you would agree, would you not, that a reduction in income of 60% is a substantial change in circumstances? We would agree, but we also agree that the trial courts have wide latitude in considering whether that change has occurred. And as we cited in the brief, even if the court makes that finding of a substantial change, the court then still has to look at the needs of the children, the financial status. I agree with that. Does the child need $5,000 in motion support? Did the trial court make it clear that, yes, this child needs that $5,000? The court didn't make that specific finding, but the court – it's our position, if you look at the overall ruling, and I know it's been stated and cited that the judge had a nine-page oral decision from the bench, but it's our opinion that Judge Drummond, what he was doing, was looking at the overall financial picture of the parties, looking at the overall financial picture of the monies that Mr. Pagliara had earned over the years, one year being over $2 million. So he was looking at that overall picture, and he was trying to tell – Well, in looking at the overall picture, the second factor then, and we just talked about the first, would be the financial resources and needs of the custodial parent. Did the court look at that? Did the court make any statements, findings, regarding the financial needs and resources? The court did have before the budgets and financial affidavits of both parties. Now, the testimony that Mr. Pagliara in his financial affidavit and monthly budget, he was trying to say that he was having a shortfall each month because of the child support and so forth. But as you see in the record, on cross-examination, he did admit that he received a $232,000 bonus. Now, I'm talking about the resources and needs of the custodial parent. What did the court say about that? She needs this $5,000. Wasn't her net worth like $1.7 million? Correct. That is correct. And hadn't she saved well over $100,000 based upon presumably child support that she was getting that she never used for several years? She was receiving maintenance as well as child support. So yes, she was investing money, obviously, for her future and the kid's future in this case because she was a stay-at-home mother. And that's what she had been. So it's our position the court considered all that. That's what I'm trying to – what is there in the record to show me that the court actually considered the resources and needs of your client, the resources and needs of the child, the standard of living of the child that he would have enjoyed but for the divorce? I don't recall the judge just specifically stating that I find that her budget is correct or it's excessive. I don't recall the judge just specifically making that finding. What I'm struggling with is if I concede with you that even though maybe the child court was inarticulate, the court kind of did find a substantial change in the circumstances. But then when I get to these other factors, once we get by that first stage, I don't see where there's anything at all for me to hang my hat on and say the court was right in this case. Well, again, if you look at the overall picture, I think that's what the judge was doing in his final decision in announcing his decision was looking at the overall standard of living the parties had. Again, they were living debt-free. They were living as a family unit with an individual that was making over a million dollars per year in income, one year over two million. So looking at the overall picture, again, that goes to the standard of living that this child, Ms. Pagliaria, would have enjoyed. So I think through that nine pages worth of explanation, I think the judge in his mind, of course I can't answer what the judge truly was thinking, but my opinion was he was thinking through all that. And I think that's what he was doing in his decision. Your argument to this court is that the standard of living of the child would suffer by $45,000 in child support. For example, if it were reduced to $2,000. Correct. And again, that was included in the budget that Ms. Pagliaria presented to the court was the need for the child and so forth. And also, Tracy presented evidence through their accountant that Ms. Pagliaria spent so much money per month and so much money investing and so forth, so she was spending and certainly spending and the monies that she had in her budget were accurate. Going back to the issue of, again, if you look at statutory guidelines, Mr. Pagliaria in cross-examination admitted that he got a $232,000 bonus and he conceded that after he pays taxes and so forth, he would have netted $150,000 just out of that bonus alone. Well, if we apply statutory factors to that figure, that alone sets a monthly child support obligation of $2,500 per month just on his bonus that he received from his employment. Mr. Pagliaria in this case was asked in the court to set child support at the sum of $2,000 per month. Obviously, less than even what his bonus would have netted on him if the court set it at the statutory guidelines. Again, it's cited in Tracy's brief, the police in case, and as Mr. Brenner properly stated, the court states in that case, ordinarily without the absence of substantial increase in income, but you're dealing with a person who had such substantial income over the years. I wasn't clear from the brief, how long does he have to hold the restricted stock before it can be liquidated? I don't recall the testimony as to whether or not he said it's one year or it's the entire time that he was employed for that particular company. Again, that was a part of the evidence and a bone of contention, if you will, during the testimony and arriving at the different net income figures. Tracy's accountant, because they deducted that, the restricted stock, they deducted moving expenses and so forth that Tracy was compensated for to arrive at their $301,000 net income figure. Obviously, our position, the statute says income from all sources. And again, it's our position that Tracy could borrow against that. Tracy admitted that he could have cashed it in, but it may not have put him in good light with his company, but he could cash that restricted stock in. So it's our position it was disposable and regardless, the statute requires income from all sources. It's our position that the trial court did not err. It's our position, again, that the trial court was enunciated that it was considering everything. It was considering the bargain that the party struck at the very beginning of the divorce or the settlement of the divorce. And basically, my opinion, the court was saying, well, if we look at this and we look at this picture and the income and assets, there's really no substantial change. Mr. Pagliara is still in a stratospheric category compared to everyone else. And of course, the court said a $52,000 decrease in child support is nothing compared to the money that he makes, and that's part of the reason and basis for the court's decision. So it's our position the court did not err. Thank you. Okay, thank you. Rebuttal? Number one, I agree with the court. The issue of the bonuses was not addressed very well in the briefs. It was addressed in the testimony. And what Tracy testified to was that he was required to maintain certain levels of stock ownership in order to remain in good standing with his company and board of directors. And what the company had done was to essentially give him this stock so that he could get up to this ownership requirements to meet the requirements of the company. That was done as part of his employment. Now, granted, that is factored into his taxable income once that stock vests. But if he wants to hold on to his job, he can't do anything with that stock. So I only bring that up as a point of clarification. Next, I think the court also brought up the child support provisions of 550 of the Illinois Marriage and Dissolution of Marriage Act, which sets forth what the court should look at in determining child support. Financial resources of the child, the resources of the custodial parent, and factors of that type. We don't believe that the trial court really looked at any of those factors. To the contrary, what the evidence showed is that Carol was receiving spousal maintenance in the amount of $7,000 per month. Her budget, which she presented to the trial court, showed that all of her expenses amounted to something like $7,300 per month. The evidence also showed that she was investing $2,000 a month. That gets us into a line of cases which is not briefed in these particular briefs, which essentially come from in Ray Marriage of Bush, 547 North and 2nd, 590. And that line of cases says that child support should not be a windfall. When we have parents who are making a substantial amount of money, child support should not be used for investment purposes. That's not the purpose of child support, and clearly that's precisely what Carol was doing. In terms of property and things like that, those are matters that could and should have been handled in terms of the initial marital settlement agreement. Now, what Carol was doing was essentially building her net worth between the child support and the spousal maintenance. I believe that that inherently shows a windfall to the custodial parent. If she can afford to invest $24,000 a year, plus there was another investment in Northwest Mutual, which was I believe $5,000 or $6,000 a year, she was maintaining this child's lifestyle. The child, Louie, was approximately seven years old at the time. He was still living in the same house he had always gone to. His father was paying for his private school tuition. His father was paying 100% of medical expenses. I believe under the circumstances, child support as set by the court does constitute a windfall to Carol. We would be asking that this case be reversed. Thank you, Your Honor. Okay. Thanks to both of you. The case is submitted and the court stands in recess until further call.